# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANDRES SALAZAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-15-1097-STE |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

## I. PROCEDURAL BACKGROUND

Plaintiff's applications for disability insurance benefits and supplemental security income were denied initially and on reconsideration. Following a hearing, an

Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 12-24). Following a denial at the Appeals Council level, Mr. Salazar filed an appeal in the United States District Court Western District of Arkansas. (TR. 573-574). That court reversed the administrative decision and remanded the case for further administrative findings. (TR. 575-576). A second administrative hearing followed, and again, the ALJ issued an unfavorable decision. (TR. 441-453). The Appeals Council denied Plaintiff's request for review. (TR. _____).[1] Thus, the decision of the ALJ became the final decision of the Commissioner.[2]

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 15, 2009, the alleged onset date. (TR. 443). At step two, the ALJ determined that Mr. Salazar had the following severe impairments: essential hypertension, diabetes mellitus with peripheral neuropathy, obesity, degenerative changes to the bilateral hips and lumbar spine, a mood disorder, and a social phobia. (TR. 443). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 444).

---

[1] The administrative record did not contain a copy of the Appeals Council's denial.
[2] The case was originally filed in the Eastern District of Oklahoma, but was transferred from that court due to improper venue. *See* ECF Nos. 5 & 6.

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work. (TR. 452). The ALJ further found Plaintiff had the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally climb ramps and stairs but never climb ladders, ropes and scaffolds and occasionally balance, stoop, kneel, crouch and drawl Further, the claimant is able to perform simple, routine and repetitive tasks involving only simple, work-related decisions with few, if any workplace changes and no more than incidental contact with coworkers, supervisors and the general public.

(TR. 446).

Based on the finding that Plaintiff could not perform his past relevant work, the ALJ proceeded to step five. There, he presented the limitations from the RFC in a question to a vocational expert (VE) to determine if there were other jobs Plaintiff could perform. (TR. 500). Given the limitations, the VE testified that Plaintiff could perform three light/unskilled jobs. (TR. 500). The ALJ adopted the testimony of the VE and concluded that Mr. Salazar was not disabled based on his ability to perform the identified jobs. (TR. 452-453).

### III. ISSUES PRESENTED

On appeal, Plaintiff alleges: (1) error at step three, (2) error in the credibility analysis, (3) error in the RFC, and (4) a failure to develop the record.

### IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the

correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V. STEP THREE

Mr. Salazar alleges error at step three in the consideration of evidence which he contends qualifies as "episodes of decompensation" as defined in the social security regulations. Plaintiff's allegation is without merit and no error occurred.

### A. Evidence Documenting Plaintiff's Mental Health Treatment

The medical record includes evidence that Plaintiff was hospitalized three times for mental health treatment in 2010. On January 28, 2010, Plaintiff was hospitalized in Griffin Memorial Hospital following a complaints of suicidal thoughts and a long history of depression. (TR. 274-77). Mr. Salazar was successfully treated with medication and discharged five days later on February 3, 2010. (TR. 268-273). On March 3, 2010, Mr. Salazar was admitted to Red Rock Behavioral Health Services due to depression and seeking a medication adjustment. (TR. 295-303). Plaintiff was diagnosed with a mood disorder and medications were prescribed. (TR. 304). Mr. Salazar was discharged on March 8, 2010. (TR. 307-310). Finally, on May 16, 2010, Plaintiff was admitted to

Baptist Health Medical Center suffering from depression and suicidal thoughts. (TR. 329). Mr. Salazar was diagnosed with Major Depressive Disorder, recurrent, severe, with psychosis, and prescribed medication. (TR. 329-330). Plaintiff was discharged from Baptist on May 18, 2010. (TR. 329-330).

### B. Remand Order

In the first unfavorable decision, the ALJ noted that Plaintiff "ha[d] experienced no episodes of decompensation, which ha[d] been of extended duration." (TR. 16). On appeal, a federal district court magistrate judge noted the evidence which had documented Mr. Salazar's three hospital stays for mental health treatment. (TR. 583-584). In light of such evidence, the magistrate judge recommended reversal and remand, stating:

> Because it is clear that Plaintiff did experience at least 3 episodes of decompensation, we feel remand is necessary to allow the ALJ to determine whether or not these episodes meet or medically equal the definition of episodes of decompensation of extended duration.

(TR. 584). The district judge adopted the recommendation and remanded the case for further administrative findings on this issue. (TR. 575-576).

### C. The ALJ's Consideration of Mr. Salazar's Mental Impairments

On remand, at step two, the ALJ concluded that Mr. Salazar had suffered from severe mental impairments involving a mood disorder and social phobia. (TR. 443). At step three, the ALJ considered the applicability of Listings 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders). (TR. 444). In order to meet either of these

Listings, the ALJ would have to have found that Mr. Salazar's limitations resulted in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration[.]

Listings 12.04 & 12.06. "Repeated episodes of decompensation," in turn, is defined as "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." Listing 12.00(C)(4).

Mr. Salazar alleges the ALJ erred in his consideration of his three hospital stays in 2010 which he believes qualify as "episodes of decompensation" as defined by the regulations. Plaintiff argues:

> [A] previous Court remanded this case with the express intention of the ALJ to reassess the decompensation issue. This was not sufficiently address [sic], and in fact, the ALJ erred a second time in find [sic] that there were no episodes of decompensation. That Court listed multiple hospitalizations including Griffin Memorial, Red Rock Behavioral Health and Baptist Medical Center for mental health issues. It is contended that these multiple admissions satisfy the criteria for decompensation and should be reevaluated.

(ECF No. 24:9-10). The Court concludes that no error occurred following the remand.

In assessing Listings 12.04 and 12.06, the ALJ noted that Plaintiff had experienced no episodes of decompensation which had been of extended duration. (TR.

445). In doing so, the ALJ noted that Mr. Salazar had reported three inpatient psychiatric stays "each of a week's duration." (TR. 445). The ALJ then detailed Mr. Salazar's stays at Griffin Memorial, Red Rock, and Baptist Health Center, and stated: "The undersigned has evaluated these hospitalizations and finds that none of them meet the criteria for an episode of decompensation as the claimant did not provide evidence that any of these episodes lasted for at least two weeks." (TR. 445).

Contrary to Mr. Salazar's allegations, the ALJ complied with the remand order and provided a detailed discussion of the three hospital stays. (TR. 445). Noting that each of the three stays lasted less than two weeks, the ALJ correctly concluded that none of them met the regulatory definition of an "episode[] of decompensation of extended duration." *See* Listing 12.00(C)(4). While the regulations do allow for a finding of "equivalency" in this area, the individual must have experienced "more frequent episodes of shorter duration" or "less frequent episodes of longer duration." Listing 12.00(C)(4). But Plaintiff has only submitted evidence of the three hospital stays and has not otherwise made an argument that these treatments were "equivalent" to qualify as "episodes of decompensation" under the listings. As a result, the Court finds no error at step three.

## VI. THE CREDIBILITY DETERMINATION

Mr. Salazar alleges error in the credibility analysis. The Court rejects the allegation as the ALJ's credibility assessment was sufficient.

A.  **ALJ's Duty to Evaluate Plaintiff's Allegations of Credibility and Pain**

Social Security regulations require a two-step process to evaluate a claimant's allegations of pain. First, the adjudicator must consider whether there is an underlying medically determinable impairment that could reasonably be expected to produce the individuals' pain. Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at 2 (July 2, 1996) (SSR 96-7p). Second, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to perform basic work activities. *Id.* In doing so, the ALJ must make a finding on the claimant's credibility based on a consideration of the entire case record, including the individual's own statements about the symptoms. *Id.* When evaluating the credibility of a claimant's allegations, the ALJ must consider factors including:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at 3; *Branum v. Barnhart*, 385 F.3d 1268, 1273-74 (10th Cir. 2004).

It is not enough for the ALJ to simply recite the factors, although he need not undergo a formalistic factor-by-factor recitation of the evidence. SSR 96-7p at 4; *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Employing "common sense" as a guide, the ALJ's decision is sufficient if it "sets forth the specific evidence he [or she] relies on in evaluating the claimant's credibility." *Id.; Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012). Nevertheless, the ALJ has a duty to "closely and affirmatively link[]" his findings "to substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). In doing so, the judge has to "give specific reasons for the weight given to the individual's statements." SSR 96-7p, Westlaw op. at 4. These reasons should be "articulated in the determination or decision" and "be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight" given "to the individual's statements and the reasons for that weight." *Id.*

**B.    No Error in the ALJ's Evaluation of Credibility/Pain**

In the credibility analysis, the ALJ stated:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of

> these symptoms are not entirely credible for the reasons explained in the decision.

(TR. 447). In his brief, Mr. Salazar quotes that portion of the opinion, sets forth the law which requires the ALJ to consider various factors in assessing credibility and the duty to link the credibility findings to substantial evidence, and then states: "It is contended that the ALJ did not go through this analysis in assessing the Plaintiff's credibility . . . . [and] [t]he ALJ erred by discounting the Plaintiff's credibility regarding subjective complaints of pain without proper discussion." (ECF No. 24:11). But Plaintiff does not provide any explanation regarding which allegations the ALJ had improperly discussed or otherwise develop his argument in this regard. And the Court concludes that no error occurred.

In analyzing Mr. Salazar's allegations, the ALJ began by summarizing Plaintiff's testimony, noting that Plaintiff attributed his disability to physical and mental impairments. (TR. 446). The ALJ noted Mr. Salazar's testimony regarding prior mental health treatment and that although Plaintiff had reported success with Zoloft, he still suffered from problems with paranoia, anxiety, panic attacks, irritability, being scared and crying. (TR. 446). The ALJ noted that while Plaintiff was hospitalized for mental health treatment in 2010, he did not follow up for outpatient treatment following his discharges and did not seek low-cost or free outpatient services. (TR. 451).

Regarding physical impairments, the ALJ noted that Plaintiff testified that he suffered from diabetic neuropathy which caused burning and numbness in his feet, and

that he had difficulties in sitting, standing, and walking for extended periods of time. (TR. 447). The ALJ noted that Plaintiff reported control of his diabetes through the medication Metformin, as substantiated by medical evidence which documented a decrease in Mr. Salazar's A1c level. (TR. 447). The ALJ noted that Plaintiff had experienced some success with taking Neurontin for his peripheral neuropathy and that his hypertension was controlled with Lisinopril and HTCZ. (TR. 447). The ALJ also noted that Plaintiff was taking Meloxicam and Celebrex to treat his arthritis, degenerative joint disease, and hip and back pain, but that Plaintiff had reported less relief from the Meloxicam. (TR. 447). Finally, the ALJ noted that Plaintiff had required no acute treatment or hospitalizations for his physical impairments and there was no evidence that Plaintiff had presented at the emergency room for treatment. (TR. 447).

The ALJ's decision addresses several of the relevant factors in evaluating the credibility of Plaintiff's allegations of disabling pain and symptoms. The ALJ acknowledged Plaintiff's testimony, and noted treatment through medication for his physical impairments, as well failure to seek treatment for his mental impairments. Even so, the ALJ did not entirely dismiss Plaintiff's subjective allegations. As noted in the RFC, the ALJ limited Plaintiff to performing a reduced range of light work, to account for his allegations that he had difficulty sitting, standing, and walking. And the ALJ accounted for Plaintiff's mental impairments by limiting him to jobs where he would perform only simple, routine, and repetitive tasks, involving only simple, work-related decisions with

few, if any workplace changes, and no more than incidental contact with coworkers, supervisors, and the general public. (TR. 446).

Plaintiff points to the principle that a claimant's minimal daily activities, by themselves, do not suggest an ability to perform the requirements of work. (ECF No. 24:11). But the ALJ did not rely entirely on Plaintiff's reported daily activities to support the credibility determination. Rather, the ALJ properly considered Plaintiff's report of his usual daily activities as one factor and also relied on objective medical evidence and other relevant factors in assessing Plaintiff's credibility.

The ALJ provided specific and legitimate reasons for discounting Plaintiff's subjective complaints and linked his credibility findings to substantial evidence in the record. Thus, the Court concludes that no error occurred in the credibility analysis and Plaintiff is not entitled to relief.

## VII. THE RFC DETERMINATION

Mr. Salazar alleges error in the RFC determination. The Court denies the allegation based on Mr. Salazar's failure to develop his argument. Plaintiff begins by correctly reciting the ALJ's RFC determination as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally climb ramps and stairs but never climb ladders, ropes and scaffolds and occasionally balance, stoop, kneel, crouch and drawl Further, the claimant is able to perform simple, routine and repetitive tasks involving only simple, work-related decisions with few, if any

workplace changes and no more than incidental contact with coworkers, supervisors and the general public.

(ECF No. 24:12 quoting TR. 446). Plaintiff then states:

It is contended that the RFC assigned in this case is not supported by the evidence in the record. The evidence in the record would support a more restrictive RFC, which the ALJ attempts to allude to by stating that he is able to perform simple, routine and repetitive tasks involving only simple, work-related decision [sic] with few, if any workplace changes and no more than incidental contact with co-workers, supervisors and the general public.

(ECF No. 24:12-13). Next, Plaintiff outlines the ALJ's duties in assessing the RFC and sets forth the relevant case law. (ECF No. 24:13-14). Finally, Mr. Salazar ends the proposition by stating: "This argument should be reversed and remanded." (ECF No. 24:14).

Mr. Salazar argues that the evidence in the record would support a "more restrictive RFC," yet he fails to explain what additional restrictions he believes should have been imposed. Although he states that the RFC was not supported by the evidence in the record, he has not cited any portion of the record which he believes was not considered by the ALJ or would have supported more restrictive limitations. As a result, the Court concludes that Mr. Salazar has waived any argument regarding error in the RFC through a failure to develop his argument. *See Murrell v. Shalala,* 43 F.3d 1388, 1390 (10th Cir. 1994) (reasoning, in the Social Security context, that "perfunctory complaints [that] fail to frame and develop an issue sufficient to invoke appellate review" are forfeited); *Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012)

("We will consider and discuss only those contentions that have been adequately briefed for review."); *Franklin Sav. Corp. v. U.S.,* 180 F.3d 1124, 1128 n. 6 (10th Cir. 1999) (arguments presented superficially are waived); *Murphy v. Astrue*, 2011 WL 2144610, at * 6 (W.D. Okla. May 14, 2011) (unpublished op.) (rejecting allegation of error for "failure to develop the factual—and legal—bases for [the] argument.").

## VIII. DEVELOPMENT OF THE RECORD

In his final allegation of error, Mr. Salazar alleges the ALJ erred in failing to fully develop the record. But again, Mr. Salazar has failed to develop his argument, thus forfeiting the claim.

Mr. Salazar begins his argument by stating: "The ALJ in this case failed to fully develop the record, and the Appeals Council in this case should have remanded the case for further development." (ECF No. 24:14). Plaintiff then outlines the ALJ's duty to develop the record and the Appeals Council's option to remand a case when additional evidence is needed or additional action by the ALJ is required. (ECF No. 24:14). Mr. Salazar ends the proposition by stating:

> The Plaintiff clearly had physical impairments that were not treated or sufficiently addressed that would result in severely limiting exertional and non-exertional impairments. The ALJ should have developed the record further to get a more accurate assessment of his true limitations.

(ECF No. 24:14).

The starting place for issues requiring further development of the record must be "the presence of some objective evidence in the record suggesting the existence of a

condition which could have a material impact on the disability decision requiring further investigation." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion that an impairment exists which needs further development. *Id.* Furthermore, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," and the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development." *Id.*

At the administrative hearing, Plaintiff's counsel asked the ALJ if there was any need for an additional consultative examination. (TR. 504). The ALJ replied that he did not know, that he would look over everything and order a new consultative examination if he deemed one necessary. (TR. 504). But in the hearing, Plaintiff did not make a specific argument regarding the need for an additional examination and did not otherwise indicate that the existing records were somehow inadequate. In short, Plaintiff made no indication that further development of the record was necessary to decide the matter. And now, in his appeal brief, Mr. Salazar has failed to identify what evidence he believes needs further development. Because Plaintiff has failed to identify the issues requiring further development, the Court rejects Mr. Salazar's fourth allegation of error. *See supra*, *Murell*, et al. (discussing forfeiture of claim through failure to develop an argument).

**ORDER**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge **AFFIRMS** the Commissioner's decision.

ENTERED on July 26, 2016.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE